[Cite as *Schaefer v. Musil*, 2014-Ohio-1504.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

NICHOLAS SCHAEFER

    Plaintiff

    and

ALLSTATE INSURANCE CO.

    Appellee

    v.

JOHN MUSIL

    Appellant

C.A. No.     27109

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.     CV 2012-03-1588

DECISION AND JOURNAL ENTRY

Dated: April 9, 2014

---

WHITMORE, Judge.

{¶1} Appellant, John Musil, appeals from the judgment of the Summit County Court of Common Pleas, granting Allstate Insurance Co.'s ("Allstate") motion for summary judgment. This Court reverses.

I

{¶2} Peggy and John Musil have been married 31 years. In December 2010, Peggy told Musil that she had been having an affair with Nick Schaefer. Peggy said she had ended the affair, and the couple sought counseling. The following June, Musil discovered that Schaefer had been in contact with Peggy again, and he confronted Schaefer at Schaefer's place of

employment. Musil introduced himself as Peggy's husband and told Schaefer to leave her alone. Musil left without there being any physical altercation.

{¶3} A few months later, in August 2011, the Musils attended a concert at Blossom Music Center. The Musils arrived about 6 p.m. and had some sandwiches and beer in the parking lot. According to Musil, he and Peggy each had two 12-ounce beers. Musil also drank a 16-ounce beer once inside the venue. At about 9 p.m. Peggy went to get more beer. When she returned she was crying and very upset. She told Musil that she had spoken to Schaefer while she was getting beer. Musil calmed Peggy and then left to use the restroom.

{¶4} Musil testified that he noticed Schaefer ahead of him in line for the restroom, but was not certain it was him until Schaefer turned out of line to step up to a urinal. At that time, Musil was approximately three people back from the adjacent urinal. According to Musil, he stepped out of line and stood next to Schaefer. While yelling at Schaefer to leave his wife alone, Musil pushed Schaefer's right shoulder, attempting to turn him so that Schaefer would be facing Musil.[1] Schaefer fell, hit his head, and was rendered unconscious. Musil testified that he was "shocked" and thought Schaefer was "faking it," but did not touch him because he was worried that someone would misinterpret his attempt to help. Instead, Musil stood and waited for security to arrive. Schaefer testified that he suffered lacerations and bruises to his head.

{¶5} Schaefer filed suit against Musil to recover for his injuries. Allstate filed a motion to intervene because Musil was covered under a homeowner's insurance policy at the time of the incident. After the court granted Allstate's motion, Allstate filed a complaint seeking

---

[1] While there is some conflicting testimony from Schaefer, as discussed below, we must view the evidence in a light most favorable to Musil.

a declaratory judgment that it had no obligation to Musil under the policy. After discovery, Allstate filed a motion for summary judgment, and Musil filed a memorandum in opposition. Ultimately, the court granted Allstate's motion. Musil now appeals from that order and raises one assignment of error for our review.

## II

### Assignment of Error

THE TRIAL COURT ERRED BY GRANTING SUMMARY JUDGMENT IN FAVOR OF ALLSTATE INSURANCE COMPANY AND FINDING THAT JOHN MUSIL INTENDED THE HARM SUSTAINED BY NICHOLAS SCHAEFER ON AUGUST 12, 2011 AND THAT HE IS NOT ENTITLED TO COVERAGE UNDER THE POLICY OF INSURANCE ISSUED BY ALLSTATE INSURANCE COMPANY OR A DEFENSE PROVIDED BY ALLSTATE INSURANCE COMPANY.

{¶6} In his sole assignment of error, Musil argues that the court erred in granting Allstate's motion for summary judgment. Specifically, Musil argues that the court erred in finding that the incident was not a covered "occurrence" within the insurance policy. We agree.

{¶7} This Court reviews a trial court's decision to grant a motion for summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). "We apply the same standard as the trial court, viewing the facts of the case in the light most favorable to the non-moving party and resolving any doubt in favor of the non-moving party." *Burr v. Nationwide Mut. Ins. Co.*, 9th Dist. Lorain No. 12CA010231, 2013-Ohio-4406, ¶ 8.

{¶8} Pursuant to Civ.R. 56(C), summary judgment is proper if:

(1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.

*Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327 (1977). The party moving for summary judgment bears the initial burden of informing the trial court of the basis for the motion and pointing to parts of the record that show the absence of a genuine issue of material fact. *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293 (1996). Once this burden is satisfied, the non-moving party bears the burden of offering specific facts to show a genuine issue for trial. *See* Civ.R. 56(E); *Dresher* at 293.

{¶9} An insurance policy is a contract to be construed in the same manner as other written contracts. *Constantine's Nursery & Garden Center, Inc. v. Florists Mut. Ins. Co.*, 9th Dist. Summit No. 16153, 1993 WL 413596, *2 (Oct. 20, 1993). "Accordingly, if the language of a policy's provision is clear and unambiguous, a court may not attempt to adopt a construction that is inconsistent with the contract's clear intent." *Id. Accord Hamilton Ins. Serv., Inc. v. Nationwide Ins. Cos.*, 86 Ohio St.3d 270, 273 (1999) ("In construing the terms of any contract, the principal objective is to determine the intention of the parties."). However, ambiguous language will be construed liberally in favor of the insured and strictly against the insurer. *Faruque v. Provident Life & Accident Ins. Co.*, 31 Ohio St.3d 34 (1987), syllabus.

{¶10} It is undisputed that Musil was covered under a homeowner's insurance policy with Allstate on August 12, 2011. Section II of his policy, in relevant part, provides:

> Subject to the terms, conditions and limitations of this policy, **Allstate** will pay damages which an **insured person** becomes legally obligated to pay because of **bodily injury** or **property damage** arising from an **occurrence** to which this policy applies, and is covered by this part of the policy.

(Emphasis sic.) An "occurrence" is defined in the policy as "an accident * * * resulting in bodily injury or property damage." (Emphasis omitted.) Accident, however, is not defined.

{¶11} "In the absence of an explicit contractual definition, [courts] will construe words and phrases contained in an insurance policy in accordance with their plain and ordinary

meaning." *World Harvest Church v. Grange Mut. Cas. Co.*, 10th Dist. Franklin No. 13AP-290, 2013-Ohio-5707, ¶ 15, citing *Safeco Ins. Co. of Am. v. White*, 122 Ohio St.3d 562, 2009-Ohio-3718, ¶ 17. An "accident" is defined as "[a]n unintended and unforeseen injurious occurrence; something that does not occur in the usual course of events or that could not reasonably be anticipated." *Black's Law Dictionary* 15 (8th Ed.2004). "[I]n its common, ordinary use, the word 'accidental' means unexpected, as well as unintended." (Emphasis omitted.) *Safeco Ins. Co. of Am.* at ¶ 21, quoting *Hybud Equip. Corp. v. Sphere Drake Ins. Co.*, 64 Ohio St.3d 657, 666 (1992).

{¶12} The trial court found that the "incident between Mr. Musil and Mr. Schaefer was not a covered occurrence [under the insurance policy]" because it was not an accident. The court stated that "[t]he narrow issue in this matter [was] whether it was an accident that Mr. Musil pushed Mr. Schaefer in the first place[,]" and whether Musil actually intended the injuries was not an issue. The court, relying on Musil's admission that he intended to push Schaefer, found that the incident was "not descriptive of an accidental turn of events[,]" and therefore, the incident was not a covered occurrence under the insurance policy.

{¶13} However, an intentional act does not necessarily preclude the finding of an accident, an unintended and unforeseen injury. *E.g., Sheely v. Sheely*, 3d Dist. Auglaize No. 2-10-38, 2012-Ohio-43, ¶ 34-38 (analyzing the intentional act of an adult providing alcohol to a minor separately from the child's death from alcohol poisoning and concluding that the child's death was not an accident because it was a foreseeable event). To automatically exclude liability flowing from every intentional act would effectively eliminate insurance company liability. *See Royal Paper Stock Co. v. Robinson*, 10th Dist. Franklin No. 12AP-455, 2013-Ohio-1206, ¶ 54 (Brown, J., concurring) ("very few acts are purely involuntary, and most accidents are the result

of at least nominally intentional acts"). (Internal citations and quotations omitted.) For example, "the [insurance] company would have no liability for a baseball intentionally thrown which accidently breaks the neighbor's window, the intentional lane change which forces another driver into the ditch, or the intentionally started trash fire which spreads to the adjacent lot." *Physicians Ins. Co. of Ohio v. Swanson*, 58 Ohio St.3d 189, 193 (1991), quoting *Farmers Ins. Group v. Sessions*, 100 Idaho 914, 917 (1980).

{¶14} Additionally, insurance contracts must be viewed as a whole. *See Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849, ¶ 11. Musil's policy contains exclusions including one for "bodily injury or property damage intended by, or which may reasonably be expected to result from the intentional or criminal acts or omissions of, any insured person." (Emphasis omitted.) Thus, an incident that is classified as an occurrence under Musil's insurance policy may still be excluded from coverage by one of the listed exclusions. If all injuries that resulted from an intentional act were automatically excluded under the definition of an occurrence there would be no need for the intentional act exclusion. Therefore, we conclude that to determine if the incident is a covered occurrence within the policy a broader question must be asked. That is, whether the injuries sustained were either unintended or unexpected based on the intentional act and the surrounding circumstances. Because there is no evidence that Musil intended to cause Schaefer injury when he pushed Schaefer, the focus falls on the unexpected prong.

{¶15} Musil testified that he pushed Schaefer with two hands on his right shoulder in an effort to turn Schaefer toward him. According to Musil, Schaefer then "fell over." Musil said he was "shocked" and "thought [Schaefer] was faking it" so he just stood there until security arrived.

{¶16}  The court found that it is reasonable to expect "that when one pushes another in a public restroom as he is trying to turn that person towards him, the other will fall and sustain bodily injury."  Viewing the evidence in a light most favorable to Musil, we must respectfully disagree.  There was no testimony about how hard Musil pushed Schaefer, only that he pushed Schaefer's right shoulder trying to turn Schaefer to face him.  Construing the evidence in a light most favorable to Musil, we conclude that there is a genuine issue of fact as to whether Musil's push to Schaefer's shoulder could reasonably be expected to result in Schaefer falling over and sustaining injury.  Because there is a genuine issue of fact as to whether the incident is a covered occurrence, the court erred in granting summary judgment based on this issue.

{¶17}  Having concluded that the incident was not an occurrence, the trial court did not proceed to analyze whether one of the policy's exclusions applied.  We express no opinion regarding the applicability of any exclusion contained in the policy and will allow the trial court to address that issue in the first instance.  *See Neura v. Goodwill*, 9th Dist. Medina No. 11CA0052-M, 2012-Ohio-2351, ¶ 19.  Musil's remaining arguments, that his criminal conviction does not establish intent and may not be considered by the court and that Allstate has a duty to defend Musil under the policy, are not ripe for review.

{¶18}  Musil's sole assignment of error, as it relates to the court's finding that the incident was not a covered occurrence, is sustained.

### III

{¶19}  Musil's assignment of error is sustained.  The judgment of the Summit County Court of Common Pleas is reversed, and the matter is remanded for proceedings consistent with the foregoing opinion.

Judgment reversed,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

BETH WHITMORE
FOR THE COURT

BELFANCE, P. J.
MOORE, J.
CONCUR.

APPEARANCES:

LAWRENCE J. SCANLON, Attorney at Law, for Appellant.

MATTHEW P. HIRSCHFELT, Attorney at Law, for Appellant.

ADAM E. CARR, Attorney at Law, for Appellee.

DAVID N. JANSKY, Attorney at Law, for Plaintiff.